UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                          CRIMINAL NO. 20-20159

v.                                        HON. DAVID M. LAWSON

MICHAEL JOSEPH McSHAN,

       Defendant.

---

**United States' Sentencing Memorandum**

---

*"He made me feel special."*

                                                              (MV-1 trial testimony)

*"I still feel like I should be loyal to him."*

                                                              (Madison trial testimony)

     Michael McShan mastered the art of convincing his victims that his rage, violence, and sexual perversions complimented their relationships. No female remained safe in his path. Not only did he sexually exploit a vulnerable teenager (MV-1), but he also forced her to exploit a young child (MV-2). When he got caught, he capitalized on his girlfriend's love, making her confess to his crimes. For all this, he should receive nothing less than **480 months' imprisonment**.

I.  **Background / Facts**

This Court is well-aware of the facts of this case, having presided over several motions for bond and the trial.

In December 2018, MV-1 began communicating with Defendant on Snapchat, a social media application that allows users to send "snaps," or photos, videos and messages that self-delete approximately ten seconds after the recipient opens it. Defendant quickly began an abusive and sexual relationship with MV-1. In addition to communicating online, Defendant met MV-1 at Lansing area hotels for sex. Defendant also required MV-1 to send sexually explicit images and videos of herself via Snapchat. He directed her to send videos of her dancing, stripping, and even inserting a vibrator (that he provided) into her vagina for him. She complied with his demands, which at times were constant and draining.

Defendant also directed MV-1 to sexually assault her younger sister, MV-2, and record it for him. He did this by, among other things, threatening to cheat on MV-1 if MV-1 failed to comply with his demands. MV-1 testified that Defendant directed her to sexually assault MV-2 on at least two occasions. The United States introduced the chat messages between the pair during one of these times at trial.

Law enforcement executed a search warrant at Defendant's house in early March 2020. Defendant agreed to be interviewed. He denied even knowing MV-1. Law enforcement arrested him that day and the magistrate judge ordered him detained.

The next month, in anticipation of another hearing for bond, Defendant directed his then-girlfriend, Madison, to claim that she used Defendant's phone to direct MV-1 to produce child pornography with her younger sister. In response to Defendant's direction, Madison sent Defendant an email and two letters confessing to attempted production of child pornography. At trial, Madison testified that her relationship with Defendant was abusive and unsettling. She described disturbing incidents of physical abuse. She explained how Defendant controlled her, manipulated her, and emotionally abused her. All this was corroborated by several jail calls, numerous emails, and letter correspondence between Defendant and Madison that the United States introduced at trial.

The jury convicted Defendant on all counts. The presentence report returned a guideline range of life imprisonment. Neither party objected to the probation department's calculations. This Court set sentencing for March 1, 2022, at 3:00 p.m.

I. **Section 3553(a) factors warrant a 480 month sentence.**

The Supreme Court has noted that, in formulating the Sentencing Guidelines, the U.S. Sentencing Commission's goal is to carry out the objectives of 18 U.S.C. § 3553(a). *United States v. Rita*, 551 U.S. 338 (2007). While advisory, the Guidelines remain an important factor in fashioning a just sentence. This is because "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 350. Moreover,

3

the guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). Thus, the starting point here is **life imprisonment**.

    a.    **The nature and circumstances of the offense**

Both MV-1 and Madison testified at trial. This Court heard the pain in their voices as they described how McShan—a man they trusted and loved—repeatedly used and abused them for his own selfish purposes. He robbed MV-1 of most of her sixteenth year of life. He manipulated her into thinking that they had a loving, adult relationship. MV-1 spent all her time trying to keep him happy. That included following his rules for eating, dressing, makeup, and appearance. It also included giving him money. And she needed to keep up with his sexual demands, which included sending sexually explicit images and videos, using sexual devices on herself, and even trying to molest her little sister. McShan's control over MV-1 was so egregious that her failure to sexually penetrate her little sister brought her to desire suicide in lieu of Defendant's wrath.

Madison, too, immensely suffered from Defendant's manipulation and control. He brutally beat her with a PVC pipe for not performing up to his standards. He brought other women into the bed and made her sleep on the couch. When she tried to leave, he relentlessly pursued her by contacting her mother, looking for her online, and sending dozens and dozens of self-made videos that often rose to the

4

level of threatening to kill her if he found her. When he got her to return in early 2020, the manipulation and abuse continued. Even behind bars, Defendant abused her emotionally and verbally. He required her to run all over town to purchase items for him. He demanded that she keep his jail account filled with money. And he forced her to write a confession to a crime that would have cost her at least fifteen years of his life.

The nature and circumstances of this offense shock the conscience. This case stands apart from other types of sexual exploitation crimes because of the savage abuse that Defendant inflicted on MV-1 and Madison. It is a crime worthy of a very lengthy sentence.

    b.    **The history and characteristics of the defendant**

Defendant has a history of violating women, as well as using his "girlfriends" to get sexual with even younger girls. Although Defendant does not have any prior felony convictions, he has likely avoided them because victims of violence frequently recant or refuse to make statements against their abusers. This Defendant's victims remained loyal to him. In 2011, police responded to a physical fight between McShan and another family member. Clairece, Defendant's mother figure, was present during the fight. She denied the fight ever occurred. Police left, only to be called back because McShan returned to the scene to continue the fight.

5

Again in 2011, when police pulled McShan over for a traffic violation, he became verbally assaultive and yelled obscenities at the officers.

In 2014, McShan attacked his child's mother. Enraged with her, McShan flicked a cigarette in her face, choked her with his hands, covered her mouth and nose, stuffed a rag down her throat, and poked her in the eyes. He stole her cell phone and refused to give it back. This victim recently interviewed with law enforcement and independently corroborated the facts in the report, remembering specific details about the violent incident six years later. (*See also* her statement to this Court, filed with this memorandum).

In 2016, McShan was violent with another woman. This time, the victim's sister overheard the victim yelling, "stop hitting me!" over the phone, and called police. The police met up with the victim at the hospital, where she explained that McShan attacked her because she did not want to drive him around. She escaped his anger by running out into the street and flagging down a stranger. Again, Clairece witnessed the abuse, though this time, she confirmed the fight to police.

In February 2020, police responded to a call at McShan's residence involving AV-2. When police arrived, AV-2 was nervous, and indicated that she wanted to leave the residence. She later talked to law enforcement through a forensic interview. She said that she met McShan through the "MeetMe" application. (She did not know and had never met MV-1). He abused AV-2 emotionally and physically, trapped

her, and described her relationship with McShan the same way that MV-1 described her relationship with him. He threatened to kill AV-2 and her family. She noted that McShan had a gun and would take it with him to sell marijuana.

Defendant's sexual interest in young girls and incest is also not new. In late 2013/early 2014, McShan coerced his then-girlfriend (AV-4) to engage in sexual acts with him and her sister (MV-3), who was 14 years old at the time. McShan, AV-4, and MV-3 traveled to McShan's house and met up with another unknown adult female. MV-3 was provided alcohol and marijuana, then asked to take a shower. While she showered, sexually explicit photographs were taken of her and sent to McShan's phone. During the evening, McShan had sexual intercourse with MV-3 and AV-4 and one other adult female. He also coerced MV-3 and AV-4 to engage in sexual contact with each other. (ECF No. 53, PageID.496: Notice of Intent to use 404(b) Evidence).

McShan has earned an extensive sentence for his criminal behavior. His history and characteristics support a 480-month sentence.

### c. Seriousness of the offense, promotion of respect for the law, and just punishment for the offense

As noted above, the circumstances of McShan's offense should not be taken lightly. The number of individuals that suffered—and will continue to suffer—because of Defendant's behavior bears repeating. First, Defendant sexually exploited MV-1 and MV-2. Even if time heals some of the damage, MV-1's

7

emotional scars remain. They will likely arise in her for the rest of her life. MV-1 must also deal with the damage done to her relationship with her little sister. In turn, MV-2 must bear the cost of Defendant's actions as well. And the entire family feels pain, anger, and fear from the upheaval that Defendant caused. (*See* impact statement from MV-1 and MV-2's mother, filed with this memorandum).

Madison will also be forever changed. Defendant physically beat her, emotionally abused her, financially bound her to him, and caused her immeasurable damage. Her family, too, feels the pain of Madison's victimization. The other women that reported Defendant's physical and sexual abuse, including those recounted above, and their families, must try to heal and move on. They will also likely continue to have trust and relationship issues.

McShan also damaged his own family. He has a daughter who will be an adult by the time he is released from prison. By his own actions, he removed himself from making any positive impact in her life. His mother-figure, now 85 years old, will likely not be alive when he is released from prison. He remains in contact with his biological mother. He previously communicated with some of his half-siblings. Instead of becoming a productive member of society and maintaining good relationships with family, Defendant persisted in using violence and manipulation to get what he wanted, whenever he wanted.

What is just punishment for all these damaged lives left in his wake? Congress believes it to be life in prison. No number of years would make up for what he did to these victims. But considering the expanse of his criminal history toward women, his disregard for human respect, and his steadfast refusal to accept responsibility, a sentence of forty years' imprisonment will meet these sentencing goals.

### d.  Adequate deterrence and protection of the public

This defendant needs to be deterred. And the public needs to be protected from him. A sentence of forty years, with current good time credit, would mean he would be released from prison around age 61. A sentence of this length weighs heavy, but the recommendation comes with serious thought and consideration of the sentencing factors, which include both general and specific deterrence, and protection of the public.

### e.  Providing defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; kinds of sentences available and the need to avoid unwarranted sentencing disparities

The Bureau of Prisons has the expertise to classify and assign McShan to the appropriate facility. A sentence of 480 months – below the guideline range – is presumed reasonable. And it is in line with similarly situated defendants.

## II. Conclusion

The United States recommends that a sentence of **480 months' imprisonment** is "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

        Respectfully submitted,

        DAWN N. ISON,
        United States Attorney

        <u>s/Margaret M. Smith</u>
        Margaret M. Smith
        Sara D. Woodward
        Assistant United States Attorneys
        211 W. Fort Street, Suite 2001
        Detroit, MI 48226
        Phone: (313) 226-9135
        E-Mail: margaret.smith@usdoj.gov
        Bar No. P71413

Dated: March 9, 2022

**Certificate of Service**

I certify that on March 9, 2022, I electronically filed the foregoing Sentencing Memorandum with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

David M. Burgess
david29_1999@yahoo.com

s/*Margaret M. Smith*
Margaret M. Smith
Assistant U.S. Attorney
United States Attorney's Office

11